Jones *v.* Kincaid.

JAMES H. JONES *v.* J. W. KINCAID *et al.* .

1. CHANCERY PLEADINGS AND PRACTICE. *Surprise.* A general order was entered by consent of the bar, continuing all litigated cases until next term. At a subsequent day of the term a judgment was taken in a *litigated* case—the defendant and his counsel having in the mean time left the court, relying upon the order of continuance. *Held,* a surprise, and that the defendant was entitled to relief in equity to the extent the judgment against him was unjust.

2. CURRENT BANK NOTES. *Standard.* The value of current bank notes, at a time and place during the war, when United States Treasury notes were unknown, to be estimated by the gold standard.

FROM COCKE.

Appeal from the Chancery Court at Newport, H. C. SMITH, Ch.

W. McFARLAND and G. W. PICKLE for complainants.

W. LANGHORNE for defendants.

McFARLAND, J., delivered the opinion of the court.

This is a bill to obtain equitable relief against a judgment rendered at law against the complainant.

The substance of the grounds upon which the relief is sought is, that the judgment at law was obtained by fraud, or if not, then under such circumstances of mistake and surprise as to entitle the complainant to relief in equity. The suit at law was brought by Kincaid against Jones in the circuit court of Grainger county, in the year 1870, but does not appear to have been finally brought to issue until August, 1871, at which time the judgment was rendered. It is charged in the bill that at that term of said court, in the early part of the term, the complainant and his attorney were in attendance upon the court for the purpose of defending said suit; that the cause was litigated and the defense was to be made in good faith. It was thereupon agreed between the attorney of said Kincaid, the plaintiff in the case, and the attorney of the present complainant, to continue said cause until the next term of the court; that this agreement was not entered of record, but a general order was entered on Wednesday of the term (which lasted a week), by consent of the bar, continuing all litigated cases until the next term. Relying upon this general order, as well as the special agreement between said attorneys as to the particular case, the complainant and his attorney left the court, and afterwards and on Saturday of the same week, the attorney of Kincaid, in violation of the agreement, called up the case and in the absence of the complainant and his attorney, took judgment for the full amount of the note sued upon.

Jones *v.* Kincaid.

The answer admits the general order continuing all litigated cases, but positively denies the special agreement as to this particular case, and says that the proposition to continue the case was made but was positively refused, and the attorney of the complainant notified that the cause would be pressed for a trial; and further, that complainant's attorney in said cause, in the interview in substance admitted that he had no ground for a continuance and no defense to the action, so that the answer insists that in taking judgment subsequently there was no bad faith, as the cause was really unlitigated and not within the general order continuing all litigated cases.

Upon the issue thus formed the testimony of the two attorneys referred to is in sharp and irreconcilable conflict. The one testifies positively and directly in support of the bill; while the other as strongly and as positively testifies in support of the answer, and there is no other testimony upon the question. The *onus* being on the complainant, and the testimony being in equipoise, the complainant must fail, so far as the charge of fraud is concerned.

But while this is true, we think it clear that the complainant and his attorney were in good faith defending the cause, and regarding the case as a litigated one, and it being in fact litigated, they regarded it as continued by the general order continuing all litigated cases, and they in good faith left the court relying upon this order of continuance, and we cannot say that in doing so they were guilty of any negligence.

We think parties and attorneys under ordinary circumstances might safely rely upon such an order as continuing all causes which were in fact and in good faith litigated. The attorney of Kincaid does not deny that he consented to the general order of continuance, or at all events does not claim to have objected.

Under these circumstances, we think the complainant ought not to be deprived of relief, if he can show that he was in fact injured by the judgment at law. The remedy probably might have been had by writ of error *coram nobis*, but we think a court of equity may also grant relief, especially as there was no demurrer to the bill. The question then is, whether the complainant had any real defenses of which he was deprived. The bill charges that he was entitled to a further credit on the note by reason of a claim that had been assigned to Vanbibber, to whom the note was originally executed, but the proof fails to sustain the allegation. The only other ground of defense set up in the bill is that the note was payable on the 1st day of January, 1863, in the notes of the Union, Planters and State Bank of Tennessee, and that on that day and at the place of maturity, said bank notes were greatly depreciated, and the judgment should have been only for the value of said bank notes, whereas it was for full face of the note. This was one of the defenses contemplated at law.

The weight of the proof shows that the note was payable in the bank notes as stated, and that they were considerably depreciated in value as compared

with gold.    The question then is as to which standard should be adopted in ascertaining the value of said bank notes, the gold, or greenback standard.    Upon this question our decisions are perhaps not uniform. But the general tenor of our decisions is, that if at the time and place of the maturity of the notes, "greenbacks," or United States currency, was not in circulation, then the value of the bank notes must be estimated according to the gold standard.    Such was the case of *Moore* v. *Gooch,* 6 Heis., which was followed at the last term at Jackson, and at the present term at this place.

The proof shows that at the maturity of this note greenbacks or United States currency were unknown at the place where the note was payable.    In the case of *English* v. *Yancy*, 2 Heis., although it is not shown in the opinion, yet it no doubt appeared that greenbacks were in circulation at the time and place the note fell due.

The decree of the chancellor will be reversed and the cause referred to the clerk to ascertain the value of the bank notes referred to on the 1st of January, 1863, and the amount which should have been received upon the note on that basis.    The complainant having paid the full amount on a refunding bond, will have a decree for the excess which he has overpaid, with costs.